UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GARY TIPTON,

    Plaintiff,

  v.                              Civil Action 2:22-cv-2854
                                      Judge Sarah D. Morrison
                                      Magistrate Judge Chelsey M. Vascura

OHIO STATE UNIVERSITY WEXNER
MEDICAL CENTER, *et al.*,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, an Ohio inmate proceeding without the assistance of counsel, brings this action against Defendants Ohio State University Wexner Medical Center ("OSU") and several of its employees, alleging that he was denied necessary medical screening, stabilization, and treatment in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and the Eighth Amendment's prohibition on deliberate indifference to serious medical needs. Plaintiff also asserts state-law claims for negligence and intentional infliction of emotional distress. (Am. Compl., ECF No. 15.) The Court previously granted Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 5); accordingly, this matter is before the Court for the initial screen of Plaintiff's Amended Complaint as required by 28 U.S.C. §§ 1915(e)(2) and 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Amended Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir.

1997). Having performed the initial screen, for the reasons that follow, the undersigned **RECOMMENDS** that that the Court **DISMISS** Plaintiff's Amended Complaint pursuant to § 1915(e)(2) and 1915A(b)(1) for failure to state a claim on which relief may be granted.

## I.     BACKGROUND

Plaintiff has a long history of attempting suicide by swallowing sharp objects or inserting sharp objects into existing wounds. (*See Tipton v. OhioHealth Grady Memorial Hospital*, S.D. Ohio Case No. 20-4843.) On February 8, 2022, while incarcerated at Mansfield Correctional Institution ("MCI"), Plaintiff again attempted suicide and was taken to OSU for treatment. Plaintiff underwent emergent surgery to remove a foreign body from his abdomen. Plaintiff alleges that, during his subsequent recovery at the hospital, Defendant Jane Doe, RN, recklessly left a needle and syringe next to his hospital bed, despite her knowledge that Plaintiff was an at-risk patient who had recently attempted suicide by inserting a foreign body into his abdomen. Plaintiff alleges that he subsequently inserted this needle into his abdominal surgical incision, but that OSU and its staff discharged him on February 12, 2022, after ignoring his statements that he had inserted foreign bodies into his incision and his requests for mental health treatment. (Pl.'s Am. Compl. ¶¶ 2–6, ECF No. 15.)

That same day, after arriving back at MCI, Plaintiff coughed, which expelled the needle from his abdominal incision. Plaintiff then allegedly stabbed himself in his abdominal incision with the needle. On February 14, 2022, MCI medical staff obtained an x-ray, which confirmed the presence of the needle in Plaintiff's abdominal incision, and which MCI staff forwarded to OSU. (*Id.* ¶ 8.)

On February 15, 2022, an unspecified OSU surgeon instructed MCI staff to return Plaintiff to OSU's emergency department. Upon arrival at OSU, Plaintiff was taken in a wheelchair by unspecified persons to "a long hallway that robotic forklifts drove up and down

transporting hospital goods." (*Id.* ¶ 9.) After allegedly waiting in this hallway for more than eight hours, Plaintiff stopped two passing OSU employees, Defendants Jane Doe #2, RN, and John Doe, RN, to ask why he had not been treated. The employees allegedly responded that "no one even knew he was there." (*Id.*) After several more hours, Defendant Dr. Jane Doe, MD examined Plaintiff and ordered an x-ray, CT scan, pain medication, and a surgery consult, after which Plaintiff underwent another emergency surgery to remove the needle from his abdomen. Several days later, Defendant Dr. Jim Doe, MD, removed Plaintiff's drain tube, which Plaintiff alleges caused a "very noticeable" lump to form at the site. Dr. Jim Doe, MD, allegedly stated, "oh, it's nothing but an air pocket" and "it will go away but Mr. Tipton, you're eventually going to learn your lesson." (*Id.* at ¶¶ 10–11.) OSU discharged Plaintiff with 22 staples in his abdomen and a large lump at the site of his wound. (*Id.* ¶¶ 11.)

Plaintiff alleges that he suffered severe abdominal pain in connection with the large lump, which Plaintiff understood to be a hernia, and requested medical treatment from prison staff numerous times in the coming months. Eventually, on August 13, 2022, Plaintiff stabbed his wound with a pencil, after which he was admitted again to OSU, where the hernia was repaired. (*Id.* ¶¶ 12–18.)

Plaintiff's Amended Complaint asserts (1) a claim against OSU for violation of EMTALA; (2) a claim against Jane Doe #2, RN and Dr. John Doe, MD for deliberate indifference to serious medical needs; (3) a claim for intentional infliction of emotional distress against all named Defendants; (4) a claim for "gross negligence: willful, wanton, and reckless negligence" against Jane Doe, RN; and (5) a claim for denial of medical treatment for serious medical needs against OSU, Jane Doe #2, RN, and Dr. John Doe, MD. (*Id.*, List of Claims, PAGEID #142–43.) Plaintiff further includes Dr. Jim Doe, MD, Dr. Jane Doe, MD, and John

3

Doe, RN, in a list of "Defendants" (*Id.*, PAGEID #142), but does not include these three Defendants in his list of claims. Plaintiff states that all individuals are sued in both their official and individual capacities. Plaintiff seeks money damages as well as declaratory and injunctive relief. (*Id.*, PAGEID # 151–52.)

## II. STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e), which provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
>     * * *
>
>   (B) the action or appeal—
>
>     (i) is frivolous or malicious; [or]
>
>     (ii) fails to state a claim on which relief may be granted. . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted. *See also* 28 U.S.C. § 1915A (requiring a court to conduct a screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity . . . [to] identify cognizable claims or dismiss the complaint, or any portion

4

of the complaint [that is] frivolous, malicious, or fails to state a claim upon which relief may be granted").

Further, to properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, in order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient

treatment, however, has limits; "courts should not have to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III.    ANALYSIS

The undersigned construes Plaintiff's Amended Complaint to assert four claims: (1) a claim against OSU for violation of EMTALA; (2) a claim against OSU, Dr. John Doe, MD, and Jane Doe #2, RN under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs in violation of the Eighth Amendment (combining Plaintiff's listed claims 2 and 5 for "deliberate indifference to serious medical needs" and "denial of medical treatment for serious medical needs," respectively); (3) a state-law claim against all Defendants for intentional infliction of emotional distress; and (4) a state-law claim for negligence against Jane Doe, RN. The undersigned will consider each claim in turn.

### A.    EMTALA

Plaintiff's EMTALA claim is asserted only against OSU. The Eleventh Amendment of the United States Constitution operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the case concerns a statute containing a clear expression of congressional intent to abrogate the states' Eleventh Amendment immunity, or the state has expressly consented to being sued in federal court. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cty.*, 211 F.3d 331, 334 (6th Cir. 2000). This Court has previously held that the Ohio State University and its medical center are the alter ego of the State of Ohio for Eleventh Amendment purposes. *See Bailey v. Ohio State Univ.*, 487 F. Supp. 601, 606 (S.D. Ohio 1980); *Matteson v. Ohio State Univ.,* 2000 WL 1456988, *3 (S.D. Ohio Sept. 27, 2000) ("[I]t is undisputed that the medical center and the hospitals are in fact part of the university [and] it is well settled that Ohio State University is an instrumentality of the

State of Ohio."). Further, EMTALA "contains no clear expression of intent to abrogate the states' immunity." *Drew v. Univ. of Tennessee Reg'l Med. Ctr. Hosp.*, 211 F.3d 1268, 2000 WL 572064 at *3 (6th Cir. 2000) (Table); *see also*, *e.g.*, *Vazquez Morales v. Estado Libre Asociado de Puerto Rico*, 967 F. Supp. 42, 45 (D.P.R. 1997) (EMTALA does not evince a clear intent to abrogate the states' Eleventh Amendment immunity); *Ward v. Presbyterian Healthcare Servs.*, 72 F. Supp. 2d 1285, 1290 (D.N.M. 1999) (same). And because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Thus, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's EMTALA claim against OSU.

**B.      § 1983 Claims for Deliberate Indifference to Serious Medical Needs**

The undersigned construes Plaintiff's Amended Complaint to assert claims under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs in violation of the Eighth Amendment against OSU and several of its employees, in both their official and individual capacities. As with Plaintiff's EMTALA claim above, Plaintiff's § 1983 claims against OSU—whether for damages or injunctive or declaratory relief—are barred by the Eleventh Amendment. *See Harrison v. Mich.*, 722 F.3d 768, 771 (6th Cir. 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("It is well established that § 1983 does not abrogate the Eleventh Amendment.")). Plaintiff's claims for money damages against OSU employees in their official capacities are likewise barred by the Eleventh Amendment because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). Further, money damages are not available under § 1983 against state employees sued in their official capacity because "state employees sued in their official capacities were not 'persons' under § 1983, and therefore could

7

not be held liable for money damages." *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001).

Plaintiff's claims against OSU employees in their individual capacities fare no better. It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett*, 414 F. App'x at 787–88; *see also Jones*, 625 F.3d at 941 ("[T]he prison official must have acted with a state of mind similar to recklessness. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk.") (citations omitted). "In examining whether a claimed injury is 'sufficiently serious'" to sustain a claim for deliberate indifference, "courts look to the *effect* of any delay in treatment caused by an officer's inaction." *Vaughn v. City of Lebanon*, 18 F. App'x 252, 274 (6th Cir. 2001) (emphasis in original). Specifically, a plaintiff "who complains that delay in medical treatment rose to a constitutional violation must place verifying medical

8

evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (citing *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)).

The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id.* However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

*Alspaugh*, 643 F.3d at 169. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . . the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)). Moreover, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* at 591. (quotation marks and citation omitted).

Here, Plaintiff has, at most, alleged that his medical care was inadequate, not nonexistent. Plaintiff describes being examined, tested, and operated on by various OSU employees to address his medical needs. Although he alleges that at times he waited several hours for treatment, he has not alleged that this delay was itself responsible for causing or exacerbating any of his injuries. *Cf. Vaughn*, 18 F. App'x at 274. Plaintiff's allegations fall therefore well short of the unnecessary and wanton infliction of pain by state officials required for an Eighth Amendment claim. *See Jones*, 625 F.3d at 941. Plaintiff's claims for money damages against the OSU employees in their individual capacities, as well as Plaintiff's claim for "a declaration that

9

the acts and omissions described herein this Complaint violated his constitutional rights under the laws and constitution of the United States," must therefore be dismissed.

In sum, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's § 1983 claims against OSU and its employees.

**C.     State-Law Claims**

The undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state-law claims for negligence and intentional infliction of emotional distress. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." Here, based upon the information contained in Plaintiff's Complaint, it appears that Plaintiff and Defendant are citizens of Ohio such that the Court may not exercise jurisdiction based on diversity of the parties under 28 U.S.C. § 1332. Thus, the Court does not have original jurisdiction over Plaintiff's state-law claims. The United States Court of Appeals for the Sixth Circuit has held that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (internal quotations omitted). Because the undersigned recommends dismissal of Plaintiff's federal claims, the undersigned also **RECOMMENDS**, pursuant to 28 U.S.C. § 1367(c)(3), that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims for negligence and intentional infliction of emotional distress and that those claims be **DISMISSED WITHOUT PREJUDICE** to refiling in an appropriate state court.

**IV.     DISPOSITION**

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's EMTALA and § 1983 claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A for failure to state a claim on which relief may be granted. It is further **RECOMMENDED** that the

Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims for negligence and intentional infliction of emotional distress, and **DISMISS** those state-law claims without prejudice to re-filing in an appropriate state court.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE